# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-00119

KAREN M. DIXON

    Plaintiff,

v.

UNITED STATES,

    Defendant.

## COMPLAINT

PLAINTIFF Karen M. Dixon complains and alleges against DEFENDANT as follows:

### INTRODUCTION

PLAINTIFF Karen M. Dixon brings this action for the wrongful death of her husband, Donald A. Dixon. Mr. Dixon was a 13-year veteran of the United States Army who served honorably during the Persian Gulf War. After his honorable discharge, the Department of Veterans Affairs (DVA) purported to treat Mr. Dixon for various medical conditions, including gout and non-Hodgkin's lymphoma. In 2012 and 2013, the DVA negligently prescribed a combination of medications that caused Mr. Dixon to develop a condition known as Stevens-Johnson Syndrome (SJS), which worsened into a more severe condition known as Toxic Epidermal Necrolysis (TEN). SJS/TEN is a skin condition whereby a person's skin and mucous membranes react severely to medication. A person's skin sloughs off, and rashes and lesions form. As happened in this case, SJS/TEN often turns fatal. Although Mr. Dixon showed and

complained of symptoms of SJS/TEN during his myriad medical appointment with DVA doctors and other medical professionals, the DVA negligently failed to diagnose his condition until it had covered much of his body and caused significant pain and suffering. Mr. Dixon never recovered from his SJS/TEN condition despite spending nearly two months in a non-DVA hospital receiving treatment. Because of the severity of his SJS/TEN, doctors could not provide Mr. Dixon the lymphoma treatment he desperately required. Mr. Dixon died in November 2013 from lymphoma with his SJS/TEN being listed as a contributing factor. Mrs. Dixon now brings this claim under the Federal Tort Claims Act for the economic and non-economic damages she has suffered.

## JURISDICTION & VENUE

1. Donald Abraham Dixon (Mr. Dixon) died on November 17, 2013 in Pike's Peak Hospice, Colorado Springs, Colorado.

2. Plaintiff Karen M. Dixon (Mrs. Dixon) was the wife of Mr. Dixon at the time of his death.

3. Plaintiff is a resident of the State of Colorado.

4. All relevant actions took place in the District of Colorado between July 2009 and November 17, 2013.

5. This action is brought pursuant to the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 1346(b), 2671 et seq., against the United States of America, which vests exclusive subject matter jurisdiction of Federal Tort Claims litigation in the Federal District Court.

6. Venue is proper in the District of Colorado pursuant to 28 U.S.C. §§ 1391(b)(1) and/or 1391(b)(2), as well as 28 U.S.C. § 1391(e)(1), because the United States is a Defendant and Plaintiff resides in the District of Colorado.

7.  Plaintiff has exhausted all administrative remedies available as described in paragraphs 78–79.

## GENERAL ALLEGATIONS

8.  This claim arises out of the negligent care and treatment of Mr. Dixon by the Department of Veterans Affairs Health System and its employees (collectively, DVA).

9.  Mr. Dixon served as a chemical operations specialist and wire systems installer in the United States Army.  He served on active duty from 1979 to 1992, when he was honorably discharged.  Among other duties, Mr. Dixon served in the Southwest Asia Theater of operations during the Persian Gulf War.

### DVA Treats Mr. Dixon for Gout

10.  In or about April 1992, while still on active duty with the United States Army, Mr. Dixon was diagnosed with gout by the DVA.

11.  Mr. Dixon received treatment for gout from the DVA.  Mr. Dixon's gout treatment included a prescription for allopurinol, which was filled in DVA pharmacies.

12.  On information and belief, Mr. Dixon took allopurinol for his gout continuously and as prescribed from approximately April 1992 until February 2013.

### DVA Treats Mr. Dixon for Lymphoma

13.  In or about July 2009, Mr. Dixon was diagnosed with non-Hodgkins lymphoma at the DVA hospital in Denver, Colorado.  [VA_HCS_MEDICAL000090][1]

---

[1] Plaintiff has previously produced medical records to the Department of Veterans Affairs in connection with her administrative claim.  Here, Mrs. Dixon identifies documents by Bates numbers stamped on her production to the government, and incorporates those documents by reference.

14. From July 2009 to October 2011, doctors at the DVA hospital in Denver, Colorado treated Mr. Dixon's lymphoma with chemotherapy drugs, including bendamustine and rituximab.

15. In or around October 2011, DVA doctors determined Mr. Dixon's cancer was in remission.

16. On information and belief, one of Mr. Dixon's DVA doctors was oncologist Dr. Thomas Braun.

17. On information and belief, Dr. Braun was an employee of the DVA hospital in Denver and the United States Government at all relevant times.

18. On or about December 6, 2012, DVA oncologist Dr. Braun determined Mr. Dixon's lymphoma had returned.

19. On or about December 20–21, 2012, Mr. Dixon underwent a two-day chemotherapy cycle. The chemotherapy drugs administered to Mr. Dixon included bendamustine and rituximab. [VA_HCS_MEDICAL000089]

20. On or about January 17–18, 2013, Mr. Dixon underwent another two-day chemotherapy cycle. The chemotherapy drugs administered to Mr. Dixon included bendamustine and rituximab. [VA_HCS_MEDICAL000089]

21. On information and belief, Mr. Dixon's DVA medical records, including but not limited to records showing that Mr. Dixon had been prescribed and was taking allopurinol for his gout, were accessible to the DVA medical professionals treating him for his illnesses.

**Mr. Dixon Develops Symptoms of Stevens-Johnson Syndrome**

22. Stevens-Johnson Syndrome (SJS) is an often fatal skin condition where the skin and mucous membranes react severely to medication, causing skin to slough off and rashes and lesions to form. The more severe form of SJS is known as Toxic Epidermal Necrolysis (TEN).

4

23. According to the Mayo Clinic, some symptoms of SJS include painful red or purple skin that looks burned and peels off, blisters on the skin, mouth, nose, and genitals, rashes, itching, mouth ulcers, and swelling.

24. On information and belief, at least some of the DVA medical professionals responsible for Mr. Dixon's care were aware of the causes and symptoms of SJS.

25. As early as January 11, 2013, Mr. Dixon presented with symptoms of SJS to the DVA medical professionals responsible for his care.

26. On or about January 11, 2013, Mr. Dixon presented to DVA dentist Dr. Terry Haunschild with tooth pain.  Dr. Haunschild recommended extraction and prescribed Amoxicillin as a prophylaxis.

27. On information and belief, Dr. Haunschild was an employee of the DVA hospital in Denver and the United States Government at all relevant times.

28.  On or about January 14, 2013, another VA dentist, Dr. Patricia Fiore, diagnosed Mr. Dixon's tooth as infected, extracted the tooth, and did not change any of Mr. Dixon's prescriptions, including one for Amoxicillin. [VA_HCS_MEDICAL000109]

29. On information and belief, Dr. Fiore was an employee of the DVA hospital in Denver and the United States Government at all relevant times.

30. On information and belief, the tooth extracted on January 14, 2013 was the third tooth that had been extracted by the DVA in the preceding 12 months. [VA_HCS_MEDICAL000115]

31. On or about January 17–18, 2013, when Mr. Dixon was receiving a round of chemotherapy, VA nurse Myung Kim noted that Mr. Dixon was having skin rashes, nausea, diarrhea, mild fatigue, constipation, and pain in the stomach area.  Mr. Dixon also reported

eating 1/2–3/4 his usual amount, and had lost approximately 27 pounds since resuming chemotherapy in or around December 2012. [VA_HCS_MEDICAL000119–VA_HCS_MEDICAL000121]

32.     On information and belief, nurse Kim was an employee of the DVA hospital in Denver and the United States Government at all relevant times.

33.     On or about January 23, 2013, Mr. Dixon again visited his VA dentist, Dr. Fiore, for oral ulcers/canker sores. He complained of mouth dryness and pain and said that he had developed mouth sores on or about January 19, the day after completing his last chemotherapy cycle. Dr. Fiore noted ulcers on the lining of his cheek, upper lip, and the ridge area between his gums and cheeks. She advised Mr. Dixon to stop using Listerine and switch to another mouthwash, Biotene, until his ulcers healed. [VA_HCS_MEDICAL000108–VA_HCS_MEDICAL000111]

34.     On or about January 29, 2013, Mr. Dixon called the nurse who worked with his VA oncologist, Dr. Braun, and reported a "very bad mouth infection." He reported that his lips, tongue, and cheeks were swollen; it was difficult and extremely painful for him to swallow; he had white film on the inside of his gums; and he had lost another 9 pounds. [VA_HCS_MEDICAL000108]

35.     On or about January 29, 2013, Mr. Dixon saw his VA primary care doctor, Dr. Michael Rutten. Mr. Dixon told Dr. Rutten that he had started having mouth sores three days after his last chemotherapy treatment. Dr. Rutten observed patchy whitish lesions and shallow ulcerations on Mr. Dixon's tongue and soft palate and noted that Mr. Dixon complained of throat pain, difficulty swallowing, and weight loss. Mr. Dixon explained that he was hungry but could not eat because of his mouth pain. Dr. Rutten diagnosed Mr. Dixon's condition as "probable oral

candiasis" (oral thrush) but said he could not exclude mucositis as a possibility. He prescribed fluconazole, an anti-fungal. [VA_HCS_MEDICAL000101–VA_HCS_MEDICAL000105]

36. On information and belief, Dr. Rutten was an employee of the DVA hospital in Denver and the United States Government at all relevant times.

37. On or about January 30, 2013, VA care coordinator Ms. Keysha Griffin called Mr. Dixon. Mr. Dixon told the coordinator that he was not eating because he had thrush in his mouth and throat. The coordinator encouraged him to use mouth rinse and the medications he had been prescribed. [VA_HCS_MEDICAL000100–VA_HCS_MEDICAL000101]

38. On information and belief, Ms. Griffin was an employee of the DVA hospital in Denver and the United States Government at all relevant times.

39. On or about February 1, 2013, Mr. Dixon saw Dr. Fiore again. Dr. Fiore noted that Mr. Dixon had a piece of tooth or bone coming out of his mouth and had asked her if she could "just take it." Her examination revealed exposed bone with ulcerations at the site where a tooth had been extracted, as well as generalized ulcers throughout his mouth, inner lips, and soft palate. Dr. Fiore prescribed Pearlman's Suspension and noted "no significant change since last dental visit." [VA_HCS_MEDICAL000097–VA_HCS_MEDICAL000100]

**Mr. Dixon Is Diagnosed with and Hospitalized for Stevens-Johnson Syndrome**

40. Mr. Dixon was admitted to the emergency room at Penrose-St. Francis Hospital in Colorado Springs, Colorado on or about February 3, 2013 with a swollen face and tongue, a red raised rash, and sores in his mouth. He was discharged the same day. [PENROSE_HOSPITAL000008–PENROSE_HOSPITAL000013]

41. Mr. Dixon's condition continued to worsen, and on or about February 7, 2013 he was hospitalized at Penrose-St. Francis Hospital in Colorado Springs, Colorado with pain and

redness all over his body and blisters on his back. [PENROSE_HOSPITAL000042, PENROSE_HOSPITAL000045–PENROSE_HOSPITAL000049]

42. On or about February 7, 2013, Mr. Dixon was transferred to University of Colorado Hospital Burn Unit with a diagnosis of SJS. [PENROSE_HOSPITAL000042, PENROSE_HOSPITAL000045–PENROSE_HOSPITAL000049]; [UNIV_CO_HOSPITAL000001–UNIV_CO_HOSPITAL000004]

43. On information and belief, approximately 15% of Mr. Dixon's body was covered with an exfoliative rash "consistent with evolving TEN" upon admission to the University of Colorado Hospital Burn Unit. [UNIV_CO_HOSPITAL000004–UNIV_CO_HOSPITAL000006]

44. On information and belief, by February 10, 2013 Mr. Dixon had developed the more severe form of SJS known as Toxic Epidermal Necrolysis (TEN). [UNIV_CO_HOSPITAL000024–UNIV_CO_HOSPITAL000029]

45. On or about February 12, 2013, Mr. Dixon experienced increasing blistering and sloughing, 40% of his body was now covered with an exfoliative rash, and he was receiving tube feedings because he could not swallow. [UNIV_CO_HOSPITAL000038–UNIV_CO_HOSPITAL000043]

46. On information and belief, on or about February 12, 2013, Mr. Dixon presented signs he was immunocompromised and risked deteriorating clinical status, and that he was not stable medically. [UNIV_CO_HOSPITAL000038–UNIV_CO_HOSPITAL000043]

47. On information and belief, DVA medical staff, including Dr. Braun, monitored Mr. Dixon's condition while he was hospitalized at University of Colorado Hospital Burn Unit.

48. On or about February 15, 2013, Mr. Dixon's VA oncologist, Dr. Braun, noted that Mr. Dixon was essentially in a body wrap, his condition was "impressive," and that the degree of exfoliation was "dramatic." [VA_HCS_MEDICAL000086– VA_HCS_MEDICAL000087]

49. On or about February 24, 2013 Mr. Dixon could not be released from the University of Colorado Hospital Burn Unit because he had developed a staph infection on his skin and had started daily silver nitrate soaks. [UNIV_CO_HOSPITAL000144–UNIV_CO_HOSPITAL000147]

### Mr. Dixon Is Discharged from the Hospital But Continues to Suffer from SJS Until His Death

50. On or about March 3, 2013, after nearly one month of continued hospitalization, Mr. Dixon was discharged from the University of Colorado Hospital Burn Unit. At discharge, wounds from Mr. Dixon's SJS/TEN covered approximately 10% of his body. [UNIV_CO_HOSPITAL000073–UNIV_CO_HOSPITAL000077]

51. After March 3, 2013, Mr. Dixon received home nursing care for burn wounds all over his body and home physical therapy for balance, strength, and gait training.

52. On or about March 27, 2013, Mr. Dixon's nurse reported concerns that he was increasingly depressed and noted that he had taken out an obituary he had written for himself. [VA_HCS_MEDICAL000039]

53. In or around April 2013, Mr. Dixon continued to endure numerous ulcers and sores in his mouth and hemorrhoid-related symptoms during bowel movements. [VA_HCS_MEDICAL000027–VA_HCS_MEDICAL000031]

54. On or about May 7, 2013, Mr. Dixon was readmitted to University of Colorado Hospital for increasing mucosal blistering and worsening hypoxia (not getting enough oxygen). Doctors performed an emergency bronchoscopy and lavage and sent him to the ICU, where he

was intubated with a feeding tube. [UNIV_CO_HOSPITAL000167–UNIV_CO_HOSPITAL000175]

55. On or about May 20, 2013, Mr. Dixon's medical chart indicates Mr. Dixon's weight "is down 86.7# (35% body wt) since Dec 2012." [VA_HCS_MEDICAL000009]

56. Mr. Dixon was discharged on or about May 21, 2013. At this time, doctors noted that his nutritional status was "severe" and that he had "inadequate intake as evidenced by 90# + weight loss over the past 6 months." [VA_HCS_MEDICAL000005]

57. During the nine months leading up to his death, Mr. Dixon experienced painful burn wounds and infections all over his body, loss of his ability to eat and swallow, weight loss, depression, and anxiety. He also underwent numerous skin grafts. His immune system was compromised and he was unable to undergo treatments he needed for lymphoma.

58. As a result of Defendant's employee's negligent care and Mr. Dixon's SJS/TEN, Mr. Dixon was no longer able to continue treatment for his non-Hodgkins lymphoma.

59. Mr. Dixon battled with SJS/TEN until his passing on or about November 17, 2013. His death certificate lists TEN as a "significant condition . . . contributing to death." His death certificate lists follicular lymphoma as his "immediate cause" of death.

60. During Mr. Dixon's illness, Mrs. Dixon cared for Mr. Dixon at home and took him to doctor's appointments.

61. Mrs. Dixon watched her husband suffer from SJS/TEN, and ultimately pass away.

### DVA Was Or Should Have Been Aware of Mr. Dixon's Potential SJS/TEN Diagnosis, But Negligently Failed to Act

62. On information and belief, DVA employees were responsible for Mr. Dixon's medical care, including treatment of his lymphoma and SJS/TEN, through at least February 7, 2013.

63. On information and belief, DVA medical personnel missed warning signs of SJS/TEN in the weeks leading up to Mr. Dixon's February 7, 2013 hospitalization.

64. On information and belief, DVA doctors prescribed several medicines that, alone or in combination with each other, caused Mr. Dixon to develop SJS/TEN: the chemotherapy drugs bendamustine and rituximab; the gout drug allopurinol; the antibiotic amoxicillin; and the antifungal fluconazole. The prescribing information for each of these drugs warns that they may cause SJS/TEN.

65. For example, the prescribing information for bendamustine states that some cases of SJS, including fatal ones, have been reported when bendamustine was administered together with allopurinol and recommends that it be "[d]iscontinue[d] for severe skin reactions."

66. On information and belief, early symptoms of SJS/TEN include mucocutaneous lesions that develop abruptly. Clusters of outbreaks last from 2–4 weeks. Involvement of oral and/or mucous membranes may be severe enough that patients may not be able to eat or drink. Patients may complain of a burning rash that begins symmetrically on the face and the upper part of the torso, and may be accompanied by ocular symptoms.

67. In the weeks leading up to Mr. Dixon's hospitalization, he complained of these symptoms to at least five separate employees of the DVA.

68. Despite these repeated complaints, the DVA failed to evaluate Mr. Dixon for SJS/TEN or take him off of any medications.

69. On information and belief, at least two separate DVA doctors confirmed that the oral and esophageal symptoms for which Mr. Dixon saw his DVA doctors in January and February 2013 were signs of SJS/TEN.

70.     On or about February 15, 2013, Dr. Braun noted: "We reviewed his meds. His providers think the culprit agent was the fluconazole, but I doubt this is correct; the timing does not fit. He was also taking Amoxicillin. The Dental note of Jan 23 is crucial. It describes his hx of oral pain beginning on January 19th (Bendamustine was given Jan 17th and 18th) . . . . [M]y guess is that the apthous ulcers were Steven's Johnson Sx. I need to review the chronologic features of Stevens/Johnson, TEN [Toxic Epidermal Necrolysis]."

[VA_HCS_MEDICAL000086–VA_HCS_MEDICAL000087]

71.     On or about March 21, 2013, Dr. Rutten noted the "causative agent is unclear a[s] he was getting several meds at the time, including allopurinol, amox[i]cillin, diflucan, as well as bendamustine and rituximab. In retrospect, the oral/esophageal symptoms developed shortly after bendamustine, making these agents the most likely cause. However, given the severity of his reaction, all agents need to be considered as potential causative agents. . . . Will need to list: Allopurinol, amox[i]cillin, rituximab, bendamustine, & diflucan as allergies."

[VA_HCS_MEDICAL000041–VA_HCS_MEDICAL000045]

72.     Records from the University of Colorado Hospital Burn Unit in Denver confirm that Mr. Dixon's SJS/TEN was caused by drugs prescribed by VA doctors, and that VA medical personnel missed warnings signs in the weeks leading up to Mr. Dixon's hospitalization.

73.     For example, on or about February 7, 2013, Dr. Jennifer Jung noted that Mr. Dixon received "chemo with rituximab and bendamustine - finished mid January with onset of oral pain 1 week afterwards. C/O oral pain and sores followed by bilateral eye redness and profuse discharge 5 days later. Also with rash in torso and BLE."

[UNIV_CO_HOSPITAL000001–UNIV_CO_HOSPITAL000003]

74. On or about February 14, 2013, Dr. Jessica Moennich noted: "Toxic epidermal necrolysis - Most likely offending drug is allopurinol. Other possibilities include fluconazole and chemotherapeutic agents." [UNIV_CO_HOSPITAL000089–UNIV_CO_HOSPITAL000091]

75. Other records from the University of Colorado Hospital Burn Unit facility confirm that Mr. Dixon's SJS/TEN prevented him from being treated for his lymphoma, leading to his death.

76. For example, on or about May 10, 2013, Dr. Eiko Browning noted that Mr. Dixon "does have further treatment options for his lymphoma," but only if he were "to improve functionally to the point where he could be seen at the VA as an outpatient." [UNIV_CO_HOSPITAL000208–UNIV_CO_HOSPITAL000212]

77. On or about May 13, 2013, Dr. Nitya Alluri noted that Mr. Dixon "has other options" for treating his lymphoma than the chemotherapy drugs he was receiving before he developed SJS/TEN but that he "needs to recover before he can get chemo." [UNIV_CO_HOSPITAL000231–UNIV_CO_HOSPITAL000234]

## Mrs. Dixon Initiates FTCA Claim

78. On or about January 27, 2015 Plaintiff initiated her tort claim under the FTCA by sending to the Department of Veterans Affairs, Office of Regional Counsel, P.O. Box 25126, Denver, CO 80225, a properly composed notice of claim and demand for payment of a sum certain of $630,000.

79. On or about July 24, 2015, Jeffrey D. Stacey, Regional Counsel, informed Plaintiff in writing, certified mail, that her tort claim was administratively denied and informed her that she could file suit within 6 months of the date the denial letter was mailed.

## FIRST CAUSE OF ACTION — WRONGFUL DEATH (NEGLIENCE)

80. Plaintiff hereby incorporates the preceding paragraphs by reference.

81. On information and belief, Defendant's employees who treated Mr. Dixon were acting within the course and scope of their employment at that time.

82. Defendant's employees owed a duty of care to Mr. Dixon to conduct themselves as reasonably careful medical professionals having and using the same knowledge and skill as those practicing in the same field of practice, at the same time.

83. Defendant's employees deviated from that standard and breached the duty of care owed to Mr. Dixon, including, but not limited to, the following acts:

   a) prescribing the medications causing Mr. Dixon to develop SJS/TEN;

   b) failing to advise Mr. Dixon of the risk of developing SJS/TEN as a result of the medications they were prescribing him;

   c) failing to monitor Mr. Dixon's medications and his reactions thereto;

   d) failing to diagnose Mr. Dixon's symptoms as SJS/TEN; and

   e) failing to modify or discontinue Mr. Dixon's medications when he presented symptoms of SJS/TEN.

84. The negligence of Defendant's employees who treated and provided care to Mr. Dixon was the cause of his pain, suffering, and death.

85. As a direct and proximate result of Defendant's employees' negligence, Plaintiff suffered economic damages, including but not limited to the loss of Mr. Dixon's income and funeral expenses.

86. As a direct and proximate result of Defendant's employees' negligence, Plaintiff has sustained, and will continue to suffer, serious and substantial noneconomic injuries including

grief, loss of companionship, impairment of the quality of life, inconvenience, pain and suffering, and emotional stress.

87. As a direct and proximate result of Defendant's employee's negligence, Plaintiff has sustained economic and noneconomic damages of $630,000.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests this Honorable Court to:

A. award Plaintiff damages for negligence resulting in Mr. Dixon's death, including all economic damages permitted under Colorado and federal law, such as reasonable funeral, burial, internment, or cremation expenses, and any net financial loss which Mrs. Dixon has incurred because of the death of her husband, Mr. Donald A. Dixon. The net financial loss is the same as the financial benefit Mrs. Dixon might reasonably have expected to receive from Mr. Dixon had he lived;

B. award Plaintiff damages for negligence resulting in Mr. Dixon's death, including all noneconomic damages permitted under Colorado and federal law, such as grief, loss of companionship, impairment of the quality of life, inconvenience, pain and suffering, and emotional stress Mrs. Dixon has suffered to the present, and any grief, loss of companionship, impairment of the quality of life, inconvenience, pain and suffering, and emotional stress Mrs. Dixon will suffer in the future;

C. grant Plaintiff such other and further relief as this Court deems necessary and proper, including costs, expert witness fees, and attorney's fees.

Dated: January 15, 2016                    Respectfully submitted,

*/s/ Thomas W. Stoever, Jr.*
Thomas W. Stoever, Jr., Bar No. 25434
Holly E. Sterrett, Bar No. 36684
Mishele Kieffer, Bar No. 48316
ARNOLD & PORTER LLP
370 Seventeenth Street, Suite 4400
Denver, CO  80202-1370
Telephone: (303) 863-1000
Facsimile: (303) 832-0428
thomas.stoever@aporter.com
holly.sterrett@aporter.com
mishele.kieffer@aporter.com

***Attorneys for Plaintiff Karen M. Dixon***

Plaintiff Address:
Karen Dixon
1125 Pond Side Drive
Colorado Springs, CO 80911